STANDARD PHOSPHATE COMPANY, A CORPORATION, AND PHOS-
PHATE MINING COMPANY, A CORPORATION, *Plaintiffs in
Error*, v. GEORGE W. LUNN, *Defendant in Error*.

## Opinion Filed October 28, 1913.

1. A joint tort is essential to the maintenance of a joint action
   for damages therefor against several parties. For separate
   and distinct wrongs in no wise connected by the ligament of
   a common purpose, actual or implied by law, the wrongdoers
   are liable only in separate actions and not jointly in the
   same action.

2. Torts that are several, separate and independent acts when
   committed do not become joint by the subsequent union or
   intermingling of their consequences, where no concert of tor-
   tious action or consequence is intended by the parties or
   implied by law.

3. When properly tested by demurrer or other appropriate pro-
   cedure, ambiguities in a pleading should be construed against
   the party in whose interest the ambiguous language is used;
   yet a court may not be held in error for overruling a de-
   murrer to an ambiguous pleading where such a pleading does
   not put the opposing party at a disadvantage and when under
   the allegations or averments of the pleading a cause of ac-
   tion or a defense may fairly be shown by proper evidence.

4. The mere fact that matter put into a stream by two defend-
   ants, each at its separate plant located at different points,
   may have united or intermingled in increasing the injurious
   consequences to the plaintiff's land lower down the stream,
   and that the damage done by each defendant may, because of
   such intermingling of consequences, be difficult of ascertain-
   ment, do not render the defendants liable to an action as
   joint tort feasors so as to make each liable for the damage
   done by both, where there is no common purpose or concert
   of action or intention to act together either actual or im-
   plied by law, and where the injury was *not caused by the
   union or intermingling* of the matter put into the stream.

5. Where in an action at law for damages the evidence does not

show a joint liability, a joint judgment is erroneous, and will be reversed.

Writ of error to Circuit Court, Polk County; F. A. Whitney, Judge.

Judgment reversed.

*E. R. Gunby* and *Wilson* & *Swearingen*, for Plaintiffs in error;

No appearance for defendant in error.

WHITFIELD, J.—The amended declaration herein is as follows:

"George W. Lunn, a citizen and resident of the County of Polk, and State of Florida, by Thomas Palmer, his attorney, sues the Phosphate Mining Company, and the Standard Phosphate Company, both corporations existing under the Laws of the State of Florida, and each doing business and each having a general agent and general office in the County of Polk and State of Florida, which said defendants have been duly summoned to answer the plaintiff in a civil action, damages $10,000.00.

For that the plaintiff, on the 1st day of November, A. D. 1908, and from thence hitherto, has been and now is the owner in fee simple, and has been and now is lawfully possessed of the following described real estate, to-wit;

Southeast ¼ of southwest ¼, and southwest ¼ of southwest ¼ of section 22 in township 29, south of range 23 east, located in the County of Polk aforesaid, and upon which said real estate of plaintiff is, and during all of the time aforesaid, has been located the plaintiff's home wherein the plaintiff has lived, and the plaintiff's farm, whereon the plaintiff is now and during all of the time aforesaid has been engaged in the occupation of farming

and live stock raising; that said real estate of plaintiff
is very valuable for the purposes aforesaid, and also very
valuable for and on account of the large deposits of phos-
phate and phosphate mining material upon and under-
neath plaintiff's said land; and said land is very valuable
as agricultural land and for farming purposes and also for
the timber growing thereon; that meandering through
said real estate of plaintiff there was at the date aforesaid
and ever since has been, and now is, a creek, branch and
stream of water, the same being the natural drainway for
plaintiff's said lands, which same will hereinafter be
designated as stream; that said stream of water so flow-
ing through plaintiff's land enters plaintiff's said land
upon the eastward side thereof, and flows in a general
westward direction through plaintiff's said land; that said
stream of water prior to the wrongs and injuries here-
inafter complained of the defendants was used by the
plaintiff for the purpose of watering plaintiff's live stock,
and also for the purpose of furnishing plaintiff drinking
water, and also used by the plaintiff for fishing and catch-
ing fish therein for his own use, and that over said stream
of water the plaintiff exercised full control upon his own
premises, and frequently crossed and re-crossed, and was
compelled to cross and re-cross said stream in going about
his business, and in going from and returning to his place
of residence aforesaid.

That to the eastward of plaintiff's lands above described
and near to the same, and situated upon the stream above
described, flowing as aforesaid through plaintiff's said
land, and upon tributaries of said stream being above and
up said stream from plaintiff's said lands, both of the
defendants herein, on the said 1st day of November, A. D.
1908, owned, operated and controlled each a separate phos-
phate mining plant, and from thence hitherto has and

now owns, operates and controls each a separate phosphate mining plant, said plant consisting of lands, mining and otherwise, buildings and machinery, and used by each of the said defendants for the purpose of mining phosphate and phosphatic material, and for washing and otherwise preparing their said output of phosphate and phosphatic material for sale in the market.

That it then became and was the duty of each of the defendants aforesaid to so operate and carry on its mining operations upon its said lands as to prevent and not allow the waste from said mining plants to escape from its said mining plant, and into the stream aforesaid above the property of the plaintiff, and to prevent the same from being carried down by the said stream to the lands of plaintiff above described, to the injury of the plaintiff and his said lands; and that the defendants and both of them should have so conducted their mining plants aforesaid as to prevent the injury to the plaintiff as hereinafter set forth.

But, on the contrary, on the 1st day of November, A. D. 1908, both of the defendants did unlawfully and injuriously to the plaintiff and to plaintiff's said land, dump, pour, flush, discharge, turn loose upon, and deliver into said stream, near each of their said mining plants, and from thence hitherto have, and now are continuing to dump, throw, pour, flush, discharge, turn loose and deliver upon and into said stream above described, so running as aforesaid through plaintiff's lands, and to the eastward and above plaintiff's said lands, large quantities of sand, dirt, slush, mud, clay and dirty water, from each of the defendant's said mining plants, so that the said stream so running as aforesaid from the defendants' said plants to and through the plaintiff's said lands has become contaminated with the same, thereby rendering said stream

unfit for the watering of live stock, and thereby killing and destroying the fish therein and thereby rendering said stream unfit for any useful purpose whatever, and thereby and by reason of the defendants' wrongful acts in so contaminating said stream with the material above described, has caused large quantities of sand, dirt, slush, mud, clay and dirty water so placed in said stream by each of the defendants, to accumulate upon the lands of plaintiff above described, and thereby destroying said stream of water for all useful purposes to the plaintiff, and has thereby caused large quantities of sand, dirt, slush, mud and clay so placed in said stream by each of the defendants, to accumulate upon plaintiff's said lands and above, upon and over the phosphate materials owned by the plaintiff in said lands, to a great depth, to-wit; to the depth of five (5) feet, and has thereby rendered the said phosphate of the plaintiff so covered by said debris, to be absolutely valueless to the plaintiff, and rendered it impossible for the plaintiff to mine, recover or utilize his said phosphate in his said land, and has thereby injured and destroyed the said land of the plaintiff for agricultural purposes, and has thereby injured and destroyed the timber of plaintiff growing on said land, and has thereby rendered said stream so boggy with mud, dirt, clay, slush, and other debris that plaintiff is unable to cross said stream in going about his business and in going from and returning to his home, but is compelled on account of the large amount of said dirt, slush, mud, clay and dirty water, wrongfully deposited and thrown in said stream by the defendants as aforesaid, to make great detours around the same in going from or returning to his home, or in going from any portion of his land on one side of said stream to the other portios on the other side of said stream.

That by reason of the wrongs and injuries of the defendants as above set forth the said lands above described have been rendered absolutely valueless to the plaintiff, and all of the value of the same has been destroyed for every purpose whatever, to the damage of the plaintiff in the sum of ten thousand ($10,000.00) dollars, wherefore the plaintiff brings his suit, and claims damages of the defendants in the sum of ten thousand ($10,000.00) dollars."

A demurrer to the declaration was filed by the Standard Phosphate Company, as follows:

"1st. That the declaration shows upon its face that the defendants operate separate and distinct phosphate plants located in separate and distinct places and that they are not jointly liable for any damage that may be done either of them to the plaintiff as set up in the plaintiff's declaration.

2nd. That under the statement of facts set up in plaintiff's declaration, plaintiff cannot recover from either of these defendants the damage, if any, that may be done by the other, as the declaration does not set up that they jointly did the damage or any damage to the plaintiff, and that the plaintiff under his declaration is not entitled to recover from both any damage that may have been done by the other one or either of these defendants; therefore they should not be joined as defendants."

The demurrer of the Phosphate Mining Company is as follows:

"1st. It appears therefrom that this defendant and the Standard Phosphate Company, its co-defendant, are and have been operating phosphate plants at different places independently of each other between which no connection is shown, and that the damage of which plaintiff complains was caused by the separate acts of said defendants

showing no joint liability for any damage which plaintiff has suffered by reason thereof.

2nd.   Said amended declaration does not allege such state of facts as entitles the plaintiff to recover from said defendants jointly any damage that may have been done to the plaintiff by reason of the premises.

3rd.   A joint action against said defendants cannot be maintained upon the allegations in said amended declaration contained."

On these demurrers the following ruling was made:

"This cause coming on to be tried this day the defendants desiring to interpose a demurrer, to which no objection is made, and thereupon said demurrer having been argued and the court being of opinion that the question involved does not properly arise on demurrer but the principle can only be properly applied on the evidence; that to hold defendants jointly liable evidence must show a damage during a time when both were contributing thereto but it would be several if evidence showed damage at different times and the court will so confine and apply the principle at the trial.   Demurrer overruled, and it appearing that a plea has been filed, a jury is therefore called to try the issue."

The defendants severally filed a plea of not guilty, and at the trial, the court, among other propositions, charged the jury as follows:

"You may find the defendants jointly guilty or one guilty and the other not guilty or both not guilty according as you may find from the evidence and instructions joint liability or not or none at all, but before you can find defendants jointly liable you must believe from the evidence that at some time since November 1st, 1908, they were jointly and during the same period of time, committing the acts as charged in the declaration and

that the acts of both jointly contributed towards damage to the land in controversy, and these defendants would only be liable jointly for such damages, if any, as resulted as a proximate result of such debris, as you may believe from the evidence was allowed to be cast on such land, if any, by both contributing thereto during the same period of time; that is both of the defendants are not jointly responsible for damage that may have resulted from the deposit of debris by one, either before the other had commenced to contribute thereto or after such other had ceased to jointly contribute thereto."

The following verdict was rendered: "We the jury find the defendants guilty and assess plaintiff's damages at $2,000.00 two thousand dollars." Judgment was rendered that the plaintiff "do have and recover of and from the defendants the said Phosphate Mining Company and the Standard Phosphate Company, both corporations, the said sum of $2,000.00 damages," &c. A writ of error was taken by the two defendants.

Since the judgment herein was rendered this court has announced the following propositions of law:

A joint tort is essential to the maintenance of a joint action for damages therefor against several parties. For separate and distinct wrongs in no wise connected by the ligament of a common purpose, actual or implied by law, the wrongdoers are liable only in separate actions and not jointly in the same action.

Torts that are several, separate, and independent acts when committed do not become joint by the subsequent union or intermingling of their consequences, where no concert of tortious action or consequence is intended by the parties or implied by law. Symmes v. Prairie Pebble Phosphate Co., —— Fla. ——, 63 South. Rep. 1.

When properly tested by demurrer or other appropriate

procedure, ambiguities in a pleading should be construed against the party in whose interest the ambiguous language is used; yet a court may not be held in error for overruling a demurrer to an ambiguous pleading where such a pleading does not put the opposing party at a disadvantage and when under the allegations or averments of the pleading a cause of action or a defense may fairly be shown by proper evidence. In such cases the administration of justice may be facilitated by a trial on the facts, the party whose pleading is assailed being then advised of its asserted defects, so as to furnish the requisite proofs to fully sustain the action or defense, and the costs following the event of the litigation.

In view of the somewhat indefinite language of the declaration including the allegation that "both of the defendants did unlawfully and injuriously to the plaintiff * * * discharge * * * into said stream, near each of their mining plants, * * * and are now continuing to * * * discharge * * * into said stream * * * large quantities of * * * dirty water, from each of the defendants' said mining plants, so that the said stream so running as aforesaid from the defendants said plants to and through the plaintiff's said lands has become contaminated with the same," and resulting in damage to the plaintiff's land, the court will not be held in error in overruling the demurrers containing grounds to the effect that the declaration does not show a joint liability.

The charge of the court was applicable to the facts in evidence, but there is no evidence that the torts alleged against the defendants jointly were in any wise connected by the ligament of a common purpose, actual or implied by law. It is clear from the evidence that while the defendants discharged matter during the same period into the stream, it was done by each at its own plant at differ-

VOL. 66, JUNE TERM, 1913.        229

Standard Phos. Co. *et al.* v. Lunn—Opinion of Court.

ent places; and it does not appear that either defendant had any connection whatever with the other in polluting the stream. While it may be that the matter put into the stream by the defendants, each at its separate plant, may have united or intermingled in increasing the injurious consequences to the plaintiff, and the damage done by each may be difficult of ascertainment, yet such union or intermingling of consequences did not cause the injury by intermingling or contact and does not render the defendants liable to an action at law as joint tort feasors so as to make each liable for the damage done by both where there is no concert of action or intention to act together either actual or implied by law. Symmes v. Prairie Pebble Phosphate Co., *supra;* 38 Cyc. 485.

These principles of law render incomplete the portion of the charge that "these defendants would only be liable jointly for such damages, if any, as resulted as a proximate result of such debris, as you may believe from the evidence was allowed to be cast on such land, if any, by both contributing thereto during the same period of time; that is both of the defendants are not jointly responsible for damage that may have resulted from the deposit of debris by one, either before the other commenced to contribute thereto, or after such other ceased to jointly contribute thereto." The charge given does not include the proposition that there should be between the defendants some concert of action or common purpose actual or implied by law, in order to make them liable in joint action at law as joint tort feasors.

The evidence does not show the defendants to be joint tort feasors, therefore the judgment against them jointly is reversed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND HOCKER, J. J., concur.